1

2

3

4

5           IN THE UNITED STATES DISTRICT COURT

6           FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    TRAVELERS PROPERTY CASUALTY          No. C 04-4917 SI
     COMPANY OF AMERICA,
9                                          **ORDER DENYING PLAINTIFF'S**
                   Plaintiff,              **MOTION FOR SUMMARY JUDGMENT**
10                                         **AND GRANTING DEFENDANT'S**
        v.                                 **MOTION FOR SUMMARY JUDGMENT**
11
     TOSCO CORPORATION, et al.,
12
                   Defendants.
13   _____/

14

15          On March 3, 2006, the Court heard oral argument on the parties' cross-motions for summary

16   judgment.  Having carefully considered the papers submitted and the arguments of counsel, the Court

17   DENIES plaintiff's motion for summary judgment and GRANTS defendant's motion for summary

     judgment.
18

19

20                                        **BACKGROUND**

21          This case arises out of a tragic industrial fire in February 1999 at the Tosco refinery in Martinez,

     California.  A Tosco[1] employee, Ernest Pofahl, died in the accident, and another employee, Steven
22
     Duncan, was seriously injured.  Following the accident, the Pofahl estate and Duncan filed three
23
     separate actions against Tosco: (1) a civil lawsuit against Tosco and several third-party company
24
     defendants in Contra Costa Superior Court; (2) claims for workers compensation benefits with the
25
     Workers Compensation Appeals Board ("WCAB"); and (3) petitions with the WCAB for augmented
26

27   _____

28          [1]  Defendant ConocoPhillips Company is the successor in interest to Tosco Corporation.  The
     parties' papers refer to defendant as Tosco, and the Court does the same in this order.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

penalties based on alleged "serious and willful" violations of the workers compensation laws.  Tosco settled the civil lawsuit with Pofahl and Duncan in 2001, and the issue presented by this lawsuit is whether a provision contained in those settlements breached the workers compensation insurance policy that Travelers issued to Tosco.

Travelers was Tosco's workers compensation carrier at the time of the accident.  Tosco had a separate general liability insurer, Allianz Insurance Company; Allianz and Tosco paid the settlement amounts to Pofahl and Duncan.  *Id.*; Lyons Decl. ¶ 9.  Travelers provided coverage for the workers compensation benefits claims only; it provided no defense or coverage for the civil suit or the "serious and willful" petitions.  *See* Lyons Decl. ¶ 4.

In the civil suit, Pofahl and Duncan asserted causes of action against Tosco for willful physical assault, fraudulent concealment, and false imprisonment.  The plaintiffs in the civil suit contended that these claims were not barred by the workers compensation exclusivity rule.[2]  Tosco filed a demurrer to the plaintiffs' claims.  The court overruled the demurrer and allowed the case to proceed.  Tosco filed a motion for summary judgment, and shortly before trial the court issued a tentative ruling that would have permitted certain of the plaintiffs' claims to proceed to trial.  The operative complaint at the time of the settlement (the second amended complaint) alleged causes of action for, *inter alia*, willful physical assault and false imprisonment.  *See* Travelers' First Request for Judicial Notice Ex. J.

Tosco has submitted evidence that its lawyers kept Travelers' lawyers apprised of the status of

---

[2]  California Labor Code Section 3600(a), known as the workers compensation exclusivity statute, provides:

> Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as otherwise specifically provided in Sections 3602, 3706, and 4558, shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur . . . .

The California Supreme Court has described California's "tripartite system for classifying injuries arising in the course of employment" as follows: (1) injuries caused by employer negligence or without employer fault that are compensated at the normal rate through the workers compensation system; (2) injuries caused by ordinary employer conduct that intentionally, knowingly or recklessly harms an employee, for which an employee may be entitled to extra compensation under Labor Code Section 4553; and (3) certain types of intentional conduct which bring the employer beyond the boundaries of the compensation bargain, for which a civil action may be brought.  *Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 713-14 (1994).

the civil case throughout the litigation of the civil case, including during settlement negotiations in the Fall of 2001. *See generally* Meyers and Lyons Decl.[3] Prior to an August 2001 mediation, Tosco's counsel informed Travelers that all of the civil and workers compensation claims would be on the table for possible settlement. *Id.* Travelers' counsel provided Tosco with estimates of the potential benefits and penalties that could be awarded in the workers compensation proceedings. *See* Meyers Decl. Ex. B. Travelers did not attend the mediation, which was partly successful and resulted in settlements between Pofahl and Duncan and the third-party company defendants (not Tosco). Tosco informed Travelers of these settlements so that Travelers could assert a lien against those third-party settlements. According to Tosco, Travelers never asserted any lien, never sought any credit, and never challenged any of those third-party settlement agreements, which expressly provided that no settlement amounts would apply in the workers compensation proceeding. Meyers Decl.

In October 2001, Tosco, Pofahl and Duncan settled the civil suit. These settlements provide for a cash payment and include the following provision:

> This Release and Settlement Agreement shall have no effect upon and is not to be construed as a release of any right of Releasors to receive Workers Compensation benefits under California law as a result of the subject incident, including but not limited to benefits for Serious and Willful Misconduct pursuant to Labor Code 4553. Tosco agrees that it will not assert any offset in such proceedings for the amounts paid in settlement under this agreement.

Saccoccio Decl. Ex. A.[4]

Some time after the settlements were finalized, Travelers petitioned the WCAB for credit of the settlement amounts against the future workers' compensation benefits owed to Pofahl and Duncan. In January 2004, the WCAB denied Travelers' petitions for credit based upon Tosco's waiver of the right to a credit in the settlements, finding that Travelers was bound by Tosco's acts under the Labor Code. *See* Saccoccio Ex. C. That opinion stated that the employer can waive the insurer's right to credit in a

---

[3]Travelers objects, inter alia, to the sentence in paragraph 8 of the Lyons Declaration which states that "I believe that Mr. Klein was aware of this settlement conference but neither he nor anyone from Travelers attended," on the grounds of lack of foundation. The Court GRANTS the objection, but notes that Travelers did not submit any evidence suggesting that Mr. Klein was not aware of the settlement conference.

[4] Although the civil settlements were filed under seal, this provision was apparently stated on the record in state court and the parties have quoted this provision in their publicly-filed papers.

1    third-party action even when the insurer is not a party to that action.  *Id.*

2         Travelers filed this lawsuit in November 2004, alleging that Tosco breached the express terms

3    of the workers compensation policy by including the waiver provisions in the civil settlements.  Tosco

4    also seeks a judicial declaration that it has no duty to pay post-settlement workers compensation benefits

5    to Pofahl and Duncan.  Both parties have filed motions for summary judgment.

6

7                                    **LEGAL STANDARD**

8         Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories,

9    and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

10   material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

11   56(c).  In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial

12   burden of identifying for the court those portions of the materials on file that it believes demonstrate the

13   absence of any genuine issues of material fact, the burden of production then shifts so that the non-

14   moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that

15   there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d

16   626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

17        In judging evidence at the summary judgment stage, the Court does not make credibility

18   determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the

19   non-moving party.  *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v.*

20   *Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).

21   The evidence presented by the parties must be admissible.  *See* Fed. R. Civ. P. 56(e).  Conclusory,

22   speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and

23   defeat summary judgment.  *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.

24   1979).

25

26                                       **DISCUSSION**

27        Travelers' motion for summary judgment contends that Tosco breached the insurance policy

28   when it waived the right to a credit on the workers compensation claims.  Travelers argues that (1)

*United States District Court*
For the Northern District of California

4

Tosco had a duty under the policy to reimburse Travelers for excess benefits paid on its behalf and not to make voluntary payments or assume obligations except at its own cost; (2) Tosco breached both provisions of the policy when it waived the right to a credit on the workers compensation claims; and (3) Travelers was damaged by that breach in the amount of the "excess" workers compensation benefits paid to Pofahl and Duncan from the date of the settlements and for all future workers compensation payments up to the amount of the settlements.[5]  Tosco's opposition and cross-motion contends that it has not violated the plain language of the policy, that if anything the policy language is ambiguous, and any ambiguity must be construed in its favor.

**1.      California Labor Code Section 3600**

The California Labor Code provides an employer with a credit against workers compensation benefits for damages awarded in a civil suit that is not barred by the workers compensation exclusivity statute.  Section 3600(b) provides,

> Where an employee, or his or her dependents, receives the compensation provided by this division and secures a judgment for, or settlement of, civil damages pursuant to those specific exemptions to the employee's exclusive remedy set forth in subdivision (b) of Section 3602 and Section 4558, the compensation paid under this division shall be credited against the judgment or settlement, and the employer shall be relieved from the obligation to pay further compensation to, or on behalf of, the employee or his or her dependents up to the amount of the judgment or settlement received by the employee or his or her heirs, or that portion of the judgment as has been satisfied.

Cal. Lab. Code § 3600(b). Section 3602(b) provides that an employee may bring an action for damages that is not barred by the workers' compensation scheme "[w]here the employee's injury or death is proximately caused by a willful physical assault by the employer" and "[w]here the employee's injury is aggravated by the employer's fraudulent concealment of the existence of the injury and its connection with the employment . . . ." Cal. Lab. Code § 3602(b)(1)-(2).[6]  In *Fermino v. Fedco*, the California

---

[5]  Travelers' motion states that it has paid more than $1.4 million in "excess" benefits, and that it is estimated that it will pay more than $2.1 million in additional excess benefits.

[6]  Section 3602(b) provides a third exception where the employee's injury or death is proximately caused by a defective product; that exception is not relevant here. Section 4558 is also not relevant; that section provides that an employee may bring an action for damages that is not barred by the workers' compensation scheme where an employee's injury or death is proximately caused by an employer's knowing removal of, or knowing failure to install, a point of operation guard on a power

Supreme Court held Section 3602 did not contain an exhaustive list of exceptions to the exclusivity rule, and that a claim for false imprisonment was not barred by the workers compensation exclusivity statute. *See* 7 Cal. 4th at 720.

**2.      The Policy**

Travelers' motion contends that Tosco breached two different provisions contained in the policy. The first provision, "Payments You Must Make," states:

> **Part One – Workers Compensation Insurance**
> . . .
>
> **F.  Payments You Must Make**
>
> You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:
>
> 1.  of your serious and willful misconduct;
>
> 2.  you knowingly employ an employee in violation of the law;
>
> 3.  you fail to comply with a health or safety law or regulation; or
>
> 4.  you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.
>
> If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

Meyers Decl. Ex. A at 1.  Travelers contends that because the workers compensation law provides a credit for civil settlements or damages under Section 3600(b), the "benefits regularly provided" include benefits that take account of this credit.  Travelers argues that Tosco breached this provision by waiving the credit because Travelers has been forced to make payments "in excess of the benefits regularly provided by the workers compensation law" on Tosco's behalf.

The second provision of the policy that Travelers relies on states,

> **Part Four – Your Duties If Injury Occurs**
> . . .
>
> 6.  Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

Meyers Decl. Ex. A at 4.  Travelers contends that Tosco breached this provision by waiving the Section

_____

press.  *See* Cal. Lab. Code § 4558(c).

3600(b) credit because that waiver "voluntarily made payments, assumed obligations or incurred expenses" on behalf of Travelers in the form of continued workers compensation benefits when, in the absence of the waiver, Travelers would have been entitled to a credit.

The initial focus when interpreting an insurance policy, as with any contract, is on the language of the policy itself.  If the contractual language is "clear and explicit," it governs.  *See Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992) (citing Cal. Civ. Code § 1638).  On the other hand, "[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it."  *Id.* at 1264-65 (quoting Cal. Civ. Code § 1649).  In the context of an insurance policy, it is not the subjective belief of the insurance company but the "objectively reasonable expectations of the insured" that controls.  *Id.* at 1265.  If, after conducting this analysis, the Court finds that the policy language is ambiguous in the context of the policy as a whole, then the Court will resolve the ambiguity in favor of the insured.  *Id.*

Travelers concedes that the policy does not specifically discuss the credit available under Section 3600(b), nor does the policy explicitly define "benefits regularly provided" to include the Section 3600(b) credit.  Instead, Travelers argues that both the policy and the Insurance Code provide that the policy generally incorporates the Labor Code, and that when the two provisions quoted *supra* are read against the backdrop of Section 3600, it is clear that Tosco breached the plain language of the policy.

The Court is not persuaded by Travelers' arguments.  Part One, Section H of the policy ("Statutory Provisions")  provides,

> 5.  This insurance conforms to the parts of the workers compensation law that apply to:
> a. Benefits payable by this insurance . . . .

Ritts Decl. Ex. A.  Section C. of the General section defines Workers' Compensation Law as "the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page," and Item 3.A. refers to the Additional States Endorsement that lists California.

Travelers asserts, without any argument or analysis, that this language incorporates the Labor Code, and thus incorporates the rights and obligations of Section 3600.   However, stating that an insurance policy "conforms" to California's workers compensation law is not tantamount to stating that

United States District Court

For the Northern District of California

an insurance policy "incorporates" that law.  Instead, the ordinary meaning of the word "conform" is "to bring into agreement or correspondence."  American Heritage Dictionary of the English Language (4th ed. 2000).  This policy provision only means that its terms are consistent with the parts of the workers compensation law regarding benefits.  The cases cited by Travelers do not hold otherwise.  *See Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 901, 916-17 (1986) ("An insurance policy, like any other contract, must be construed in its entirety, with each clause lending meaning to the other."); *see also Maxfield Wilton & Assoc. v. Indus. Accident Commission*, 19 Cal. App. 2d 606, 609 (1937) ("The policy must be read as a whole and in the case of a policy given pursuant to the terms of the Workmen's Compensation Act it must be construed with reference to the provisions of the Compensation Act.").

Tosco also asserts for the first time in its reply that California Insurance Code Section 11650 incorporates the Labor Code into the insurance policy.  Section 11650 provides,

> Every contract insuring against liability for compensation and every compensation policy is conclusively presumed to contain all of the provisions required by this article.

Travelers provides no argument or analysis of why Section 11650 means that the insurance policy incorporates the Labor Code.  Insurance Code Section 11650 is contained within Article 2 "Policy Provisions." The Court interprets Section 11650 to mean that insurance policies are presumed to contain the provisions required by Article 2 "Policy Provisions"; neither Section 11650 nor Article 2 says anything about incorporating the Labor Code.

Because the policy did not clearly incorporate Section 3600(b), the Court concludes that the "payments you must make" and the "do not voluntarily make payments" provisions did not explicitly prohibit Tosco from waiving the Section 3300(b) credit without Travelers' consent.[7]  As discussed

---

[7] Travelers' complaint alleged that Tosco violated additional provisions contained in the policy. Tosco's motion for summary judgment addresses five provisions (including the two that Travelers focused on in its motion), and contends that Tosco did not violate any of these provisions when it waived the Section 3600(b) credit. Although Travelers' reply to its motion for summary judgment states that it has not abandoned its contention that Tosco violated policy provisions other than the two discussed in its motion for summary judgment, Travelers' opposition to Tosco's motion for summary judgment again only discusses the "payments you must make" and "do not voluntarily make payments" provisions. Accordingly, by its failure to address these other provisions in its summary judgment opposition, the Court concludes that Travelers has abandoned its claims that Tosco breached these provisions. Moreover, even if Travelers had not abandoned these contentions, the Court concludes that

1    *supra*, neither of these provisions discusses settlement of a non-workers compensation civil lawsuit, and

2    neither mentions Labor Code Section 3300(b).  Similarly, the policy does not define "the benefits

3    regularly provided by the workers compensation law" to include the Section 3300(b) credit.  Tosco had

4    the legal right to waive an offset in the workers compensation proceedings, and the Travelers policy did

5    not clearly and explicitly restrict that legal right.

6         At the least, the policy language is ambiguous as to whether "the benefits regularly provided by

7    the workers compensation law," "payments," "obligations," or "expenses" include the Section 3300(b)

8    credit.  When faced with ambiguous language in an insurance policy, the Court must first attempt to

9    interpret the language in context, with regard to its intended function in the policy.  *See Bank of the*

10   *West*, 2 Cal. 4th at 1264. In making this determination, the Court considers the "objectively reasonable

11   expectations of the insured," as well as "common sense."  *Id.* at 1264, 1276; *see also Cooper Companies*

12   *v. Transcontinental Ins. Co.*, 31 Cal. App. 4th 1094, 1106 (1995).  If this inquiry does not resolve the

13   ambiguity, the ambiguity is resolved against the insurer.  *Id.*

14        Here, as noted *supra*, there is no language anywhere in the policy that would put an insured on

15   notice that the policy prohibited entering into a civil settlement involving non-workers compensation

16   claims and waiving the Section 3600(b) credit.  The Court finds it significant that the availability of a

17   credit under Section 3600(b) has been in place since 1982 when the Legislature amended Section 3600

18   to include subsection (b).  *See* Cal. Lab. Code § 3300 (West 2006).  Travelers could have easily included

19   clear and explicit language in the policy precluding Tosco from waiving the Section 3600(b) credit

20   without Travelers' consent, but it did not.[8]  In addition, the only evidence in the record regarding the

21   "objectively reasonable expectations of the insured" is the Declaration of Jeffrey McKinley, submitted

22

23

24   ─────────────────

25   none of these provisions clearly or explicitly prohibited Tosco from waiving the Section 3600(b) credit without Traveler's consent.

26        [8] At oral argument, counsel for Travelers stated that Travelers did not include explicit language

27   prohibiting Tosco from waiving the Section 3300(b) credit because claims that are not barred by the workers compensation exclusivity statute (and that do not fall within the "serious and wilful" category) are rare.  While this may be true, it does not explain why an insurance company would choose not to

28   explicitly address a known risk in an insurance policy.

by defendant.[9]  Travelers, presumably because it contends that the policy language is clear and explicit, did not submit any evidence on this point.  The McKinley declaration states that a reasonable insured would not have understood the Travelers policy to impose the duty Travelers now asserts.  *See* McKinley Decl. ¶¶ 8-13.

For these reasons, the Court concludes that a reasonable insured would not have expected the policy to prevent it from waiving a credit under Section 3300(b) in a settlement in a civil suit that was not insured by the workers compensation policy.  Moreover, if any ambiguity remained, the policy provisions would be read against Travelers in any event.  *See Bank of the West*, 2 Cal. 4th at 1264.

The cases relied on by Travelers are distinguishable from the instant case.  Travelers principally relies on *Liberty Mutual Insurance Company v. Altfillisch Construction Company*, 70 Cal. App. 3d 789 (1977), which was first cited in its reply.  In *Altfillisch*, Liberty Mutual Insurance Company issued a policy with a subrogation condition to an insured, Conexco, who leased a scraper (earth moving machine) to Altfillisch.  The condition provided,

> Subrogation: In the event of any payment under this policy the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.  The insured shall do nothing after loss which would prejudice such rights.

*Id.* at 796.  When the insured Conexco leased the scraper to Altfillisch, Conexco contracted away Liberty's right to subrogation without Liberty's knowledge.   As part of the agreement between Altfillisch and Conexco, Conexco informed Altfillisch that it had made arrangements to cover the scraper with insurance, and Conexco billed Altfillisch for insurance coverage.  In fact, no such insurance arrangements were ever made.  *Id.* at 793.  The scraper was later damaged by Altfillisch.  Liberty paid Conexco for its loss and brought a subrogation action against Altfillisch.  Conexco intervened, arguing that Liberty did not have such subrogation rights because Conexco had waived these rights in its agreement with Altfillisch.  Liberty then cross-claimed against Conexco seeking to recoup the money

---

[9]  The Court DENIES plaintiff's motion to strike the McKinley declaration because plaintiff's objections go to the weight and not the admissibility of that declaration.  Moreover, the Court concludes that the McKinley declaration is properly offered as evidence of the reasonable expectations of the insured.  *See Cooper Companies v. Transcontinental Ins. Co.*, 31 Cal. App. 4th 1094, 1107 & n.9 (1995).

United States District Court

For the Northern District of California

1  paid to Conexco.

2      The trial court held that the agreement by Conexco to furnish insurance to Altfillisch precluded

3  any right of subrogation on behalf of Liberty.  *Id.* at 794.  However, the court found that the agreement

4  between Conexco and Altfillisch "constituted a material fact affecting the substantive rights" of Liberty,

5  and that Conexco violated a material condition of the insurance policy in that it contracted away

6  Liberty's right of subrogation.  *Id.* at 795.  The court held that the insured's violation of the material

7  conditions of the policy voided the policy in its entirety with regard to the loss, and that Liberty was

8  entitled to reimbursement from Conexco of the full amount paid for the loss.[10]

9      The Court of Appeal affirmed.  The court first rejected Conexco's argument that the subrogation

10  provision in the insurance policy was ambiguous, holding that "by no stretch of reasonable interpretation

11  could [the subrogation provision] be construed as contemplating, let alone permitting, the oral

12  agreement between Conexco and Altfillisch."  *Id.* at 796.  The court then held that "[g]iven Liberty's

13  expectation of opportunities to subrogate in the event of payment of a loss caused by the negligence of

14  a third party, it was clearly a breach of the insured's implied covenant of good faith and fair dealing for

15  Conexco to frustrate that expectation by contracting away such opportunity before the loss occurred."

16  *Id.* at 797.[11]  The court also held that the agreement between Conexco and Altfillisch, "which had the

17  legal effect of cutting off Liberty's opportunities for subrogation against the tortfeasor Altfillisch,

18  breached an implied condition of the policy . . . ."  *Id.* at 798.

19      However, *Altfillisch* is distinguishable in at least one critical respect.  The subrogation provision

20  in *Altfillisch* explicitly provided that the insurer had a right of subrogation, and imposed on the insured

21  the duty to "do whatever else is necessary to secure such rights" and provided that the "insured shall do

22  nothing after loss which would prejudice such rights."  There is no similarly explicit provision in the

23  Travelers' insurance policy stating that Travelers has the right to a Section 3600(b) credit and that Tosco

24

25      [10]  At the time of trial, Altfillisch successfully extricated itself from the case by means of a
   motion under Section 631.8 of the Code of Civil Procedure.

26      [11]  The court also held that the equities supported affirming the trial court's judgment because
   Conexco charged Altfillisch 90 cents per $1,000 of valuation coverage, whereas Conexco paid liberty
27  only 60 cents per $1,000 of valuation coverage, and thus "the only logical conclusion to be reached in
   view of the surcharge is that Conexco was charging Altfillisch for coverage in addition to that already
28  provided under the policy."  *Id.* at 798.

is prohibited from doing anything which would prejudice those rights.

Both parties also rely on *Low v. Golden Eagle Insurance Company*, 110 Cal. App. 4th 1532 (2003). In *Low*, Golden Eagle issued a commercial general liability policy to a real estate developer, ADI. The policy provided that "[n]o insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." *Id.* at 1534-35. ADI tendered a construction defect lawsuit to Golden Eagle, and then settled the lawsuit without notice to, or participation by, Golden Eagle. At some point after the settlement was finalized and after ADI informed Golden Eagle of the settlement, Golden Eagle denied the claim, claiming, *inter alia*, breach of the no voluntary payment provision, and also that the settlement did not involve damages covered by the policy. *Id.* at 1540. The trial court held that the "no voluntary payments" provision barred ADI's recovery of pre-tender expenses but that other policy provisions did not bar post-tender expenses because Golden Eagle had also been at fault. The Court of Appeal reversed, holding that because ADI breached the "no voluntary payments" provision, Golden Eagle was not liable for any expenses, including the settlement. *Id.* at 1547.

Travelers argues that, like the insured in *Low*, Tosco settled the civil suit without Travelers' consent in violation of the "no voluntary payments" provision. However, *Low* is distinguishable because the insured in that case settled claims that were covered by its insurance and then attempted to get the insurance company to pay the settlement amount, in clear violation of the "no voluntary payments" provision. Here, Tosco settled civil claims not covered by the Travelers policy and did not ask Travelers to contribute to the civil settlements.

## CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion for summary judgment (Docket No. 31), and GRANTS defendant's motion for summary judgment (Docket No. 38). Plaintiff's motion to strike exhibits 4, 5 and 6 to the Meyers Declaration is DENIED, as the Court finds that Tosco has submitted deposition testimony authenticating these documents. Plaintiff's motion to strike paragraph 8, lines 3:24-26 of the Lyons Declaration is GRANTED for lack of foundation, and the motion to strike paragraph 8, lines 3:27-4:3 is DENIED because it is not offered for the truth of the matter asserted. For

United States District Court

For the Northern District of California

1   the reasons stated *supra*, plaintiff's motion to strike the McKinley Declaration is DENIED.  (Docket No.

2   50).  The Court GRANTS plaintiff's requests for judicial notice.  (Docket Nos. 35 and 57).

3

4   **IT IS SO ORDERED.**

5

6   Dated: March 8, 2006

7

8   _____
    SUSAN ILLSTON

9   United States District Judge